1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JoDell Martinelli, et al., | No. CV-09-529-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Petland, Inc.; and The Hunte Corporation, | |
| Defendants. | |

Defendants Petland, Inc. and The Hunte Corporation have filed motions to dismiss the amended complaint pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. ##58, 59. The motions are fully briefed. Dkt. ##60, 61, 62, 67. For the reasons that follow, the amended complaint will be dismissed with prejudice for all Plaintiffs other than Elliot Moskow and Karen Galatis to the extent they assert certain claims against Petland.[1]

**I. Background.**

Petland is a large national retailer of pets. Petland and its franchisees sell puppies at more than 100 stores throughout the United States. Hunte supplies many of the puppies sold at Petland stores.

On March 16, 2009, six purchasers of Petland puppies – JoDell Martinelli, Stephanie Booth, Melia Perry, Abbigail King, Nicole Kersanty, and Ruth Ross – filed a class action

---

[1] Plaintiffs have not requested oral argument. Defendants' request is denied because the parties have fully briefed the issues and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

complaint against Petland and Hunte. Dkt. #1. Plaintiffs claimed that they bought Petland puppies with the understanding that they were "bred under safe and humane conditions by a reputable breeder with proper canine husbandry practices," when the puppies actually were bred at a "puppy mill." *Id.* ¶¶ 8-13. A puppy mill, according to Plaintiffs, is "a dog breeding operation in which the health of the dogs is disregarded in order to maintain a low overhead and maximize profits." *Id.* ¶¶ 2, 18. Plaintiffs alleged that their puppies were sick at the time of purchase or became ill shortly thereafter. *Id.* ¶¶ 8-13. The complaint asserted a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), which is predicated on alleged violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. *Id.* ¶¶ 67-88 (count one). The complaint also asserted a RICO conspiracy claim under 18 U.S.C. § 1962(d) (count two), violations of consumer protection laws from many states (count three), a claim for unjust enrichment (count four), and a violation of the Ohio Consumer Sales Practices Act (count five). *Id.* ¶¶ 89-121.

On August 7, 2009, the Court granted Defendants' motions to dismiss the complaint. Dkt. #49. Because Plaintiffs sought an opportunity to file an amended complaint (Dkt. #44 at 12), and because the pleading deficiencies possibly could be cured by amendment, the Court dismissed the complaint without prejudice. Dkt. #49.

Plaintiffs filed an amended complaint on September 11, 2009. Dkt. #54. The amended complaint asserts the five claims from the original complaint (*id.* at ¶¶ 123-81), but adds 26 new plaintiffs (*id.* ¶¶ 16-37). Defendants argue that the amended complaint suffers from the same defects as the original complaint.

**II.     The RICO and RICO Conspiracy Claims.**

The RICO statute makes it unlawful for any person associated with an enterprise to participate in the conduct of such enterprise's affairs, or to conspire to do so, through a pattern of racketeering. 18 U.S.C. § 1962(c), (d). The alleged pattern of racketeering in this case is mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Dkt. #54 ¶ 135. To plead a violation of those statutes, Plaintiffs must allege that Defendants formed a scheme to defraud, used the United States mails and wires in furtherance of that scheme, and did so

with the specific intent to defraud. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). Plaintiffs also must allege facts showing that the fraudulent scheme proximately caused Plaintiffs' injuries. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004).

### A. Causation.

The Court dismissed the original RICO claims, among other reasons, for failure to plead proximate causation adequately. Dkt. #49 at 6-8. The Court found insufficient the conclusory allegation that Plaintiffs unwittingly purchased puppy mill dogs "[a]s a direct result of Defendants' fraudulent scheme" (Dkt. #1 ¶¶ 87, 99). *Id.* at 7. The complaint alleged that Plaintiffs purchased a Petland puppy "with the understanding that he was bred under safe and humane conditions by a reputable breeder with proper canine husbandry practices" (Dkt. #1 ¶¶ 8-13), but the basis for this belief was not provided, and the complaint did not otherwise allege that Plaintiffs relied on misrepresentations about the origin of Petland puppies when they made their purchases. *See id.* at 6-7. The Court therefore concluded that Plaintiffs had failed to plead causation sufficient to state claims for relief under the RICO statute. *Id.* at 8.

Defendants argue that the amended complaint again fails to plead causation adequately. Dkt. #58 at 12-15, 59 at 5-7. The Court agrees with respect to all but two Plaintiffs, who have sufficiently alleged damages proximately caused by Petland. The amended complaint alleges a fraud scheme based on misrepresentations, but, with two exceptions, fails to allege that Plaintiffs relied on the scheme's misrepresentations when deciding to purchase a Petland puppy.

### 1. The general failure to plead causation.

Defendants created the scheme to defraud, in Plaintiffs' words, by "misrepresenting that the puppies sold at Petland retail stores across the nation to Plaintiffs and the Class were 'healthy,' 'the finest available,' and by deliberately misrepresenting puppy mills who bred the dogs as 'professional and hobby breeders who have years of experience in raising quality family pets,' and by deliberately misrepresenting that the puppies were from USDA-licensed

breeders, thereby misrepresenting the true origin and value of the dogs sold at Petland." Dkt. #54 ¶ 137. Petland's misrepresentations purportedly were made pursuant to Petland's "uniform standards for selling puppies through a written health certificate and/or warranty provided at the time of sale" (*id.* ¶ 3) and in statements made on Petland's website and in written brochures "mailed and/or provided to consumer[s] in its retail locations" (*id.* ¶¶ 5, 64, 71-72, 92). Hunte is claimed to have made the following misrepresentations on its website: the puppies it provides to Petland are "the healthiest puppies on the planet" (*id.* ¶¶ 3), the puppies are from "the most reputable USDA-approved breeders" (*id.* ¶ 73, 153), Hunte is dedicated to providing "the absolute best care possible to every single puppy no matter what it costs" (*id.*), and Hunte has established "comprehensive musculoskeletal criteria for accepting puppies from breeders" (*id.* ¶¶ 3, 74, 151).

Conspicuously missing from the amended complaint, however, is the allegation that Plaintiffs relied on any of these misrepresentations when deciding to purchase their Petland puppies. In fact, not a single Plaintiff has alleged that he or she ever visited Defendants' websites, received Defendants' written brochures, or relied on a written health certificate or warranty. Each Plaintiff alleges that his or her puppy was bought "with the specific understanding that he was healthy, and bred under safe and humane conditions by a reputable breeder with proper canine husbandry practices" (Dkt. #54 ¶¶ 10-37), but, with the exception of Plaintiffs Elliot Moskow and Karen Galatis (*id.* ¶¶ 31, 33), Plaintiffs do not explain the basis for this belief or allege that it arose from Defendants' misrepresentations.

Moskow and Galatis allege that they received specific representations by individual Petland employees that their puppies either were healthy or not bred at a puppy mill. Dkt. #54 ¶¶ 31, 33. These Plaintiffs will be discussed separately below. The Court first will consider whether the remaining Plaintiffs have sufficiently pled causation.[2]

---

[2] Plaintiffs JoDell Martinelli and Cheryl and Allen Huston allege that they were provided a warranty of good health (*id.* ¶¶ 10, 28), but they do not allege that they relied on the warranty in deciding to purchase their puppies (*id.*). Indeed, Plaintiff Martinelli alleges that she thought the puppy "might not be well" when she purchased it. *Id.* ¶ 10. Plaintiffs Rachel and Eric Camilleri allege that "[a]t the time of sale, Plaintiff[s] Camilleri [were] given

### 2. **Plaintiffs other than Moskow and Galatis.**

"Proximate causation requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (quoting *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). The Court made clear in its order dismissing the original complaint that, absent some allegation of reliance, Plaintiffs have not pled a "'direct and proximate causal relationship' between Plaintiffs' injuries and [the] purported fraudulent scheme." Dkt. #49 at 8 (quoting *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774 (9th Cir. 2002)). No specific allegation of reliance is made in the amended complaint. Given that Plaintiffs were on notice that reliance is required to state a claim for relief under the RICO statute (*see id.* at 7), the Court assumes this omission is intentional and will not infer reliance where it has not been alleged. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (the plausibility standard set forth in *Twombly* "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 (N.D. Cal. 2009) ("The court will not make the unsupported inference that the individual plaintiffs purchased the drug as a result of defendant's fraudulent conduct.").

Plaintiffs argue that causation should be inferred as a matter of "common sense" or as a logical explanation for their behavior in purchasing puppies from Defendants. In support of this argument, Plaintiffs cite the Ninth Circuit's discussion in *Poulos*, which declined to find causation based on common sense. 379 F.3d at 667. As *Poulos* explained, Courts have found common-sense causation when the plaintiffs' actions could not be explained in any way other than reliance on the defendants' misrepresentations. In *Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill. 1999), for example, the plaintiffs clearly would not have bought the

---

the assurance that their puppy was in good health" (*id.* ¶ 34), but they do not identify the form of the assurance and, more importantly, do not allege that they relied on it (*id.*).

product labeled "car wax" if they knew it contained no car wax, had "minimal value," and did "nothing to protect a car or enhance its appearance." *Id*. at 599. The defendant's representation that it was "car wax" necessarily contributed to the plaintiffs' decision to purchase it as car wax. In *Peterson v. H&R Block Tax Services, Inc.*, 174 F.R.D. 78 (N.D. Ill. 1997), the plaintiffs would not have purchased the tax refund service if they had known they were not eligible to use it. As the district court explained, "[i]t is inconceivable class members would rationally choose to pay a fee for a service they knew was unavailable[.]" *Id*. at 85.

The Ninth Circuit concluded in *Poulos* that the obvious causation in these cases does not arise where the plaintiffs' motive for acting might be unrelated to the alleged misrepresentations. The alleged misrepresentations in *Poulos* concerned the nature and risks of computerized slot and poker machines. The Ninth Circuit recognized that representations about such matters may have had nothing to do with why plaintiffs choose to gamble on the machines. Plaintiffs' reasons for playing "may be an addiction, a form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores of other things." 379 F.3d at 668. Because there is "no single, logical explanation for gambling," the Ninth Circuit concluded, the court could not conclude, as a matter of common sense, that the plaintiffs relied on the misrepresentations. A showing of individual reliance was required. *Id*.

In this case, as in *Poulos*, there is no single, common-sense reason for a puppy purchase. A person might buy a puppy because he falls in love with it in the store window, he has heard it will make a good guard dog, he likes the price, he is referred to the store by a friend, or he finds the store convenient. It is not necessarily true that every purchaser would base his or her decision on the fact that the puppy was "the finest available" or was bred by professional, hobby, or USDA-approved breeders – key misrepresentations identified in the amended complaint. Dkt. #54 ¶¶ 5, 137.

In making their common-sense causation argument, Plaintiffs focus exclusively on the health of the puppies, asserting that "it is illogical that Plaintiffs would purchase their sickly or dying puppy mill puppy absent a misrepresentation as to its health." Dkt. #61 at 17. This

argument has a certain appeal – rational people generally would not pay hundreds or thousands of dollars for a sick puppy – but the Court finds it insufficient to invoke common-sense causation. A person who falls in love with a puppy in the store window might well purchase the puppy in the absence of any representation concerning its health. However unwise, some people may even buy a sick puppy in order to provide it a good home and nurse it back to health. It simply cannot be said that a representation concerning the puppy's health is obviously relied on in the same way that a consumer looking for car wax relies on the product's label as "car wax" or in the same way that a person paying for a tax service relies on the assumption that the service will be available. Plaintiffs conspicuously have failed to allege that they relied on representations concerning the puppies' health, and the Court cannot assume that such representations were the reason Plaintiffs purchased the puppies.

The Court notes that this is not an omissions case. Plaintiffs repeatedly allege that they were harmed by Defendants' affirmative misrepresentations concerning the health and origins of the puppies, not by Defendants' omissions. Indeed, in response to the original motions to dismiss, Plaintiffs made clear that they "do not allege that Petland had a duty to speak," stating instead that their claims are based on the fact that "Petland knowingly misrepresents the origin of the puppies it sells[.]" Dkt. #44 at 14-15. In response to Defendants' renewed motions, Plaintiffs again confirm that their claims "are based upon a number of misrepresentations made by Defendants." Dkt. #61 at 13. They also state, however, that "to the extent that the Amended Complaint can be read as a failure to disclose," it should be sustained. *Id*. This ambiguous statement does not alter the fact that the amended complaint focuses almost exclusively on misrepresentations. Because this is a misrepresentation case, Plaintiffs cannot rely on the presumption of reliance recognized in some securities-fraud omissions cases such a *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). As the Ninth Circuit explained in *Poulos*, "the *Affiliated Ute* presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." 379 F.3d at

667 (quotation marks and citation omitted). Consistent with this law, Plaintiffs never argue in response to Defendants' motions that reliance should be presumed because of alleged omissions.

Because Plaintiffs other than Moskow and Galatis do not allege that they relied on any of Defendants' alleged misrepresentations, the Court concludes that they have not pled the causation necessary for their RICO claims. "Causation lies at the heart of a civil RICO claim." *Id.* at 664. Plaintiffs conclusory allegation that they unwittingly purchased puppy mill dogs "[a]s a direct result of Defendants' fraudulent scheme" (Dkt. #54 ¶¶ 143, 159) is insufficient to survive the motions to dismiss. *See Iqbal*, 129 S. Ct. at 1954 (the Federal Rules "do not require courts to credit a complaint's conclusory statements without reference to its factual content"); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d at 1053 (RICO claims dismissed where the plaintiffs failed "to do more than formulaically recite an injury that is proximately related to the injurious conduct alleged"); *Abalos v. Bronchick*, No. C07-844RSL, 2008 WL 1929893, at *3 (W.D. Wash. Apr. 28, 2008) (denying leave to amend where the plaintiff failed to allege "how the RICO violation caused his damages"). The amended complaint contains no other allegation of causation. The Court, therefore, will grant Defendants' motions to dismiss the RICO claims with respect to Plaintiffs other than Moskow and Galatis. *See Greenstein v. Peters*, No. CV 08-6104 PSG, 2009 WL 722067, at *3 (C.D. Cal. Mar. 16, 2009) (dismissing amended complaint where the plaintiff failed to allege that his purchase decision was affected by the fraudulent conduct); *see also Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131, 2144 (2008) (noting that "the complete absence of reliance may prevent the plaintiff from establishing proximate cause"); *Mulligan v. Choice Mortgage Corp. USA*, No. CIV. 96-596-B, 1998 WL 544431, at *7 (D.N.H. Aug. 11, 1998) (for RICO action stemming from mail and wire fraud, "plaintiffs must . . . demonstrate that they relied upon defendant's scheme or artifice to defraud.").[3]

---

[3] In support of their causation argument, Plaintiffs cite the three-part test in *Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008): "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate

### 3. **Plaintiffs Moskow and Galatis.**

Plaintiff Elliott Moskow alleges that he "specifically asked the Petland representative at the time of purchase whether 'Petland received their puppies from puppy mills' to which he was assured they did not." Dkt. #54 ¶ 31. Plaintiff Karen Galatis alleges that she was specifically assured by Petland employee Bill Sturgeon that her puppy was healthy: that it "(1) had never been sick, (2) was up to date on his shots, (3) was not hypoglycemic, and (4) was lethargic and quiet only because he was stuck in a cage all day long." *Id.* ¶ 33. Although neither Plaintiff specifically alleges that he or she relied on these representations, the Court can fairly infer that the representations influenced their purchase decisions. For Moskow, the inference arises from the fact that he specifically asked whether the puppy was from a puppy mill, showing that this issue was relevant to his decision. For Galatis, the inference reasonably arises from the fact that she discussed the puppy's health in some detail with employee Sturgeon, including why the puppy was lethargic. In both cases, the factual allegations of the amended complaint reasonably suggest that the Plaintiffs relied on what they were told by Petland employees. Moreover, the amended complaint generally alleges that Plaintiffs "were misled to believe [the puppies] were healthy" (*id.* ¶ 65), an allegation that has meaning in the case of Plaintiffs Moskow and Galatis given the detail provided concerning their purchases.

Although the amended complaint focuses primarily on a broad scheme to defraud that includes websites, brochures, and health certificates, none of which is alleged to have been seen by Plaintiffs Moskow and Galatis, it also alleges that "Petland misrepresented the puppies sold to Plaintiffs and members of the Class as healthy during each transaction in conjunction with the Petland 'System' *orally* or through written health certificate and/or

---

the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Id.* at 1055 (quotation omitted). *See* Dkt. #61 at 15. This test, quoted from *Association of Washington Public Hospital Districts v. Phillip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001), is a standing inquiry used to determine whether an injury is "too remote." *Id.* Defendants have not alleged that Plaintiffs lack RICO standing.

warranty provided at the time of sale." *Id.* ¶ 61 (emphasis added). The oral representations Petland made to Plaintiffs Moskow and Galatis are thus part of the scheme alleged in the amended complaint.

In sum, the Court concludes that the amended complaint alleges facts giving rise to a reasonable inference of reliance by Moskow and Galatis on oral representations made by Petland. As to these Plaintiffs, the Court will not dismiss for lack of causation the RICO claim asserted against Petland in count one of the amended complaint.

### 4. Allegations concerning Hunte's misrepresentations.

The oral representations that influenced the purchase decisions of Moskow and Galatis were made by Petland, not Hunte. Dkt. #54 ¶¶ 31, 33. The amended complaint contains no allegation that either Moskow or Galatis visited Hunte's website. *See id.* ¶¶ 73, 74, 151, 153. The allegations of the amended complaint do not show, nor do they otherwise give rise to a reasonable inference, that Plaintiffs Moskow and Galatis purchased their puppies in reliance on representations made by Hunte.

Plaintiffs assert that while Petland created and managed the fraudulent scheme, "it relied on Hunte to provide a constant supply of puppy mill puppies, and deliver those puppies to Petland stores[.]" Dkt. #60 at 9. But unlike the puppies purchased by some Plaintiffs (Dkt. #54 ¶¶ 16, 17, 19, 20, 22, 24, 30, 35), the puppies purchased by Moskow and Galatis are not alleged to have been from Hunte (*id.* ¶¶ 31, 33). *See also id.* ¶ 152 (noting that only some Plaintiffs "purchased Petland puppies provided by Hunte"). Hunte may not be held liable for the alleged misconduct of other puppy breeders or brokers where the amended complaint contains no allegations tying Hunte to these other companies. *See Twombley*, 550 U.S. at 570.

In short, Moskow and Galatis have failed to allege facts showing the "direct relation" between their injuries and Hunte's representations necessary to plead proximate cause. *Canyon County*, 519 F.3d at 981. Their RICO claims asserted against Hunte in count one of the amended complaint will be dismissed.

### B. Sufficiency of Fraud Allegations.

Petland argues that the amended complaint fails to satisfy the pleading requirements of Rule 9(b). Dkt. #58 at 10-12. That rule "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud[.]" *Lancaster Cmty. Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). The "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Petland asserts that as to the alleged oral representations, Plaintiffs "fail to allege who made them, who they were made to (such as to which plaintiffs), or what was actually said." Dkt. #58 at 10. This is incorrect as to Plaintiffs Moskow and Galatis.

Plaintiff Moskow alleges who said what to whom: a Petland employee told him that Petland does not receive its puppies from puppy mills. Dkt. #54 ¶ 3. Moskow also alleges the time (October 2008) and place (the Petland store in Topsham, Maine) of the representation. *Id.* These allegations are sufficiently particular to satisfy Rule 9(b). *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554-55 (9th Cir. 2007).

The allegations made by Plaintiff Galatis also provide sufficient particularity. *See Vess*, 317 F.3d at 1106. Galatis alleges that she purchased her puppy on August 3, 2008 from the Petland store in Manchester, New Hampshire, and Petland employee Bill Sturgeon told her that the puppy had never been sick, was up to date on his shots, was not hypoglycemic, and was lethargic and quiet only because he was stuck in a cage all day long. Dkt. #54 ¶ 33.

In short, Plaintiffs Moskow and Galatis have sufficiently "identifi[ed] the circumstances of the fraud so that [Petland] can prepare an adequate answer from the allegations." *Odom*, 486 F.3d at 553. The Court will not dismiss their RICO claims against Petland under Rule 9(b).

Nor will their claims be dismissed on the ground that the alleged misrepresentations are non-actionable puffery. *See* Dkt. #58 at 8. Whether Petland received dogs from a puppy mill – as described in the complaint – is capable of being proven true or false. Similarly, representations that a dog had never been sick, was up to date on his shots, and was not

1 | hypoglycemic (*see id.* ¶ 33), are statements of fact, not vague opinions.

**C.  RICO Conspiracy.**

Count two asserts a RICO conspiracy claim in violation of 18 U.S.C. § 1962(d). Dkt. #54 ¶¶ 145-60.  An agreement to violate RICO is the essential element of a RICO conspiracy claim. *See Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774 (9th Cir. 2002).  "The illegal agreement need not be express so long as its existence may be inferred from the words, actions, or interdependence of activities and persons involved." *Id.* at 775.  The Court dismissed the RICO conspiracy claim asserted in the original complaint (Dkt. #1 ¶¶ 89-100) because the complaint's allegations did not permit the Court to infer more than the mere possibility of a conspiratorial agreement between Hunte and Petland. Dkt. #49 at 10.  Hunte argues that the amended complaint fares no better.  The Court agrees.

The amended complaint alleges no facts showing an express agreement to violate RICO.  The complaint alleges that Hunte's agreement to participate in the Petland scheme "can be inferred from its distribution of puppy mill puppies and its supportive false statements concerning those puppies' health and welfare." Dkt. #54 ¶ 154.  In support of this purported inference, Plaintiffs recite the statements Hunte made on its website about the health and welfare of the puppies it supplies (*id.* ¶¶ 151, 153) and note that Hunte has been cited for violations of the Animal Welfare Act (*id.* ¶ 150).

The Supreme Court's decision in *Twombly* "adds a new bite to the RICO requirement that the Plaintiffs describe the agreement to conspire in the complaint." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008).  *Twombly* makes clear that Rule 8(a)(2) requires factual allegations possessing "enough heft to 'show that the pleader is entitled to relief.'" 550 U.S. at 557.  To satisfy this pleading requirement for a conspiracy claim, the complaint must include allegations "plausibly suggesting (not merely consistent with) agreement." *Id.*

The allegations of the amended complaint lack the heft under *Twombly* to permit the Court to infer more than the mere possibility of a conspiratorial agreement between Hunte and Petland.  The complaint has therefore "alleged – but it has not 'shown' – 'that [Plaintiffs

1 are] entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see*
2 *Solomon*, 574 F. Supp. 2d at 1292 (dismissing RICO conspiracy claim where the complaint's
3 allegations primarily concerned the substance of the agreement but contained "no other
4 allegations about who made the agreement, when the agreement was made, or how the
5 Defendants made the agreement"). The Court will dismiss the RICO conspiracy claim
6 asserted in count two of the amended complaint.

**III.    The State Law Claims.**

Count three of the original complaint asserted violations of many state consumer protection statutes. Dkt. #1 ¶¶ 101-11. Count five asserted a claim under the consumer sales practices act of Ohio, Petland's principal place of business. *Id.* ¶ 116-21. In response to Petland's initial motion to dismiss, Plaintiffs did not dispute that proximate causation is an essential element of claims brought under state consumer protection statutes. *See* Dkt. ##34 at 14, 44 at 15-17. The Court dismissed the state law claims on the ground that Plaintiffs' allegations of proximate cause were entirely too general to satisfy Plaintiffs' "obligation under Rule 8(a) to allege facts *showing* an entitlement to relief [.]" Dkt. #49 at 8 (emphasis in original). Defendants argue that the state law claims asserted in the amended complaint fail for the same reason. Dkt. ##58 at 13-14, 59 at 6-7.

As explained more fully above, Plaintiff Moskow has alleged facts from which causation reasonably may be inferred. Moscow is a resident of Maine (Dkt. #54 ¶ 31), and the amended complaint asserts a claim under the Maine Unfair Trade Practices Act (*id.* ¶ 170(6)). The Court will not dismiss that claim for lack of causation to the extent it is asserted against Petland.

Plaintiff Galatis also has alleged facts from which causation reasonably may be inferred, but she is a resident of Massachusetts. *Id.* ¶ 33. No claim is asserted under Massachusetts law. *See id.* ¶ 170.

Plaintiffs other than Moscow and Galatis have not alleged facts sufficient to adequately plead causation. Dkt. #54 ¶¶ 10-30, 32, 34-37. Count three alleges generally that Plaintiffs have suffered a loss and are entitled to relief "[a]s a proximate result of Defendants'

1 misrepresentations[.]" *Id.* ¶ 169. Similar conclusory allegations of causation are made with respect to each state statute. *Id.* ¶ 170(1)-(20). The sole allegation of causation in count five is that Plaintiffs suffered damage "[a]s a direct result of the deceptive practices of the Defendants[.]" *Id.* ¶ 181.

The Court previously made clear to Plaintiffs that their pleading obligation under Rule 8(a) "'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Dkt. #49 at 8 (quoting *Twombly*, 127 S. Ct. at 1965); *see Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court will dismiss for lack of causation all state law claims other than Plaintiff Moskow's claim against Petland under the Maine Unfair Trade Practices Act (Dkt. #54 ¶¶ 31, 170(6)). *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d at 1054 (dismissing claims where the complaint failed to satisfy "the requirement that there be a connection between the misdeed complained of and the loss suffered under state law").

Citing statutes and case law from various states, Plaintiffs assert that *reliance* is not an element of many state consumer protection claims. Dkt. #60 at 12 & n.2. But Plaintiffs do not dispute that *causation* is an essential element. Indeed, "whether it be termed an issue of reliance or an issue of proximate cause, an appropriate rule is that where the defendant is alleged to have made material misrepresentations or misstatements, there must be a *cause and effect relationship* between the defendant's acts and the plaintiff's injuries." *Lilly v. Hewlett-Packard Co.*, No. 1:05-CV-465, 2006 WL 1064063, at *5 (S.D. Ohio Apr. 21, 2006) (emphasis added); *see Lieblang v. Crown Media Holdings, Inc.*, No. 07 C 4250, 2008 WL 320470, at *7 (N.D. Ill. Jan. 31, 2008) ("[R]eliance is not an element of statutory consumer fraud, but a valid claim must show that the consumer fraud proximately caused plaintiff's injury."); *Schnall v. AT&T Wireless Servs., Inc.*, 161 P.3d 395, 401-02 (Wash. Ct. App. 2007) (causation required under Washington consumer protection statute even though "reliance is not the only means by which causation can be proven"); *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, No. 607-cv-1503-Orl-19KRS, 2009 WL 15113389, at *13-

14 (M.D. Fla. May 27, 2009) (causation an essential element under Florida statute); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657-58 (D. Nev. 2009) (reading causation element into Nevada statute); *Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545, 550 (N.M. App. 2003) (New Mexico statutes "require proof of a causal link between conduct and loss"); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (Pennsylvania statute requires the plaintiff to show an "ascertainable loss *as a result of* the defendant's prohibited action") (emphasis in original); *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001) (causation an essential element of Minnesota consumer protection claims); *Mulligan v. Choice Mortgage Corp. USA*, No. CIV. 96-596-B, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998) (plaintiff bringing a claim under New Hampshire statute must "establish a causal link between the conduct at issue and his or her injury"). Thus, regardless of whether reliance is a required element under state consumer protection statutes, Plaintiffs "must at least allege that they were exposed to the offensive conduct." *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999). Plaintiffs other than Moskow and Galatis have made no such allegation.

**IV. The Unjust Enrichment Claim.**

The Court dismissed the original unjust enrichment claim on the ground that it was predicated on fraud (*see* Dkt. #1 ¶ 113), and Plaintiffs had failed to plead the underlying fraud-based claims sufficiently. Dkt. #49 at 9 (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008); *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E. 2d 920, 928 (Ill. Ct. App. 2009)). The unjust enrichment claim asserted in the amended complaint is unchanged. It again alleges that "Defendants have profited and benefitted from their scheme to defraud purchasers of puppies from Petland." Dkt. #54 ¶ 173; *see* Dkt. #1 ¶ 113. Because Plaintiffs other than Moskow and Galatis have failed to plead causation in the underlying fraud claim adequately, the Court will grant the motions to dismiss the unjust enrichment claim with respect to those Plaintiffs. Plaintiffs Moskow and Galatis have pled an adequate fraud-based claim against Petland, but not Hunte. Their unjust enrichment therefore will be dismissed to the extent it is asserted against Hunte.

1  Plaintiffs cite *Arnold & Associates, Inc. v. Misys Healthcare Systems*, 275 F. Supp. 2d 1013 (D. Ariz. 2003), for the proposition that an unjust enrichment claim survives even where a fraud claim has been dismissed. Dkt. #60 at 15. But the unjust enrichment claim asserted in *Arnold* was predicated on a theory of contract, not on a scheme to defraud. *See Arnold*, 275 F. Supp. 2d at 1025 ("[I]t is reasonable that Plaintiff did not render its services gratuitously or officiously, but rather pursuant to a contract or agreement[.]"). The dismissal of the separate fraud claim in *Arnold* therefore had no impact on the contract-based unjust enrichment claim.

## V.   The Economic Loss Doctrine.

Petland contends that Plaintiffs' claims are barred by the economic loss doctrine. Dkt. #58 at 15-16. "Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and tort." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). The doctrine "provides that certain economic losses are properly remedial only in contract." *Id.* Petland asserts that because Plaintiffs' allegedly received damaged goods (unhealthy puppies), they therefore assert "typical warranty claims giving rise to purely economic losses." Dkt. #58 at 15. The Court does not agree.

"'Tort law has traditionally protected individuals from a host of wrongs that cause only monetary damage[,]" including fraud. *Giles*, 494 F.3d at 875. Where tort claims have been barred by the economic loss doctrine, "they usually have amounted to nothing more than a failure to perform a promise contained in a contract." *Id.* at 876. This is not the basis for Plaintiffs' claims. Petland itself recognizes that Plaintiffs assert "fraud-based claims." Dkt. #58 at 17.

"The key rationale underlying the economic loss doctrine presupposes that there has been a fair and equitable negotiation of the allocation of risk between the parties." *KD & KD Enters., LLC v. Touch Automation, LLC*, No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec. 27, 2006). A fraudulent misrepresentation "undermines the ability of the parties to negotiate freely, and therefore negates the presumption that equitable

negotiation has occurred." *Id.* In such a situation, the economic loss doctrine does not apply because it would be "unreasonable to restrict [the defrauded] party to contractual limitations of liability[.]" *Id.*

The amended complaint alleges that each puppy sold to Plaintiffs "was misrepresented as 'healthy' to facilitate its sale[.]" Dkt. #54 ¶ 63. While the misrepresentations allegedly were made both orally and in written warranties, Plaintiffs are not seeking damages based on Petland's failure to honor its warranty. Rather, Plaintiffs seek damages for being fraudulently induced into purchasing sick puppies. The economic loss doctrine does not bar Plaintiffs' claims. *See Giles*, 494 F.3d at 875; *KD & KD*, 2006 WL 3808257, at *2-3; *Frank Lloyd Wright Foundation v. Kroeter*, Nos. CV-08-1112-PHX-DGC, CV-08-1125-FJM, 2008 WL 5111092 (D. Ariz. Dec. 3, 2008).

## VI. Conclusion.

The claims asserted against Defendant Hunte will be dismissed. All claims asserted against Defendant Petland will be dismissed except (1) Plaintiffs Elliot Moskow and Karen Galatis' count-one RICO claim, (2) Plaintiffs Elliot Moskow and Karen Galatis' unjust enrichment claim, and (3) Plaintiff Moskow's claim under the Maine Unfair Trade Practices Act. Plaintiffs do not seek leave to file a second amended complaint. In addition, the Court concludes that Plaintiffs have been afforded an adequate opportunity to plead their claims. The dismissal therefore will be with prejudice.

**IT IS ORDERED:**

1. Defendant Petland, Inc.'s motion to dismiss (Dkt. #58) is **granted in part** and **denied in part**.
2. Defendant The Hunte Corporation's motion to dismiss (Dkt. #59) is **granted**.
3. The Court will set scheduling conference by separate order.

DATED this 26th day of January, 2010.

*David G. Campbell*
David G. Campbell
United States District Judge